For today, which is Three Expo Events versus City of Dallas, I'll hear first from Mr. Murray. Yes, Your Honor. May it please the Court, my name is Michael Murray and I do represent the appellant, Three Expo, LLC. I do deserve four minutes of my time for rebuttal. Your Honors, we respectfully submit that Three Expo does have standing to raise its claims under the federal Constitution, the First and Fourteenth Amendments in Article I, Section 10, arising out of the City's refusal to allow Three Expo to hold its adult-themed event at the Convention Center of Dallas. In contrary to the District Court's conclusion, the fact that under its preferred business model, Three Expo produces, promotes, and manages the event, but ordinarily forms an affiliated entity to sign the contract with the event center, in no way defeats Three Expo's standing. I think the sequence of events is important to understand why standing shouldn't really be contested here. Three Expo held its event in August of 2015. It was a three-day event, and it went off with great success, at least as far as Three Expo was concerned, and at the time, the Convention Center thought it was successful as well. So they sought to reschedule a reprise of the event in 2016. And ultimately, the Convention Center did pencil them in for May 22 of 2016, and they prepared a draft contract for that event. And in fact, it was also a contract similar to the one in 2015 that had been prepared, and that contract was signed on behalf of the plaintiff by a gentleman by the name of Jay Handy, who was one of the members of Three Expo, and he signed it on behalf of an affiliated entity that had been created, although, as the record shows, there was a mistake about the name. But the point was, the Convention Center had no problem allowing Mr. Handy to use the affiliated entity as the signator on the contract, and it went forward. And so when 2016 came around, before the new contract was finalized, the matter became controversial as a matter of public interest, and it became political, and city council did get involved, and there was a very spirited meeting on February 10, 2016, at which a resolution was introduced and adopted to prohibit the event. Now, the video recording of the council meeting, which is at the Record on Appeal at 3067, leaves no doubt that the purpose of the resolution was to ban the event at the Convention Center. The language of the resolution, of course, specifically refers to the three-day Adult Entertainment Expo that Three Expo wanted to hold again at the Dallas Convention Center. And both Ronald King, who was the Executive Director of the Convention Center and who had signed the 2015 contract, and Assistant Director John Johnson, both of them testified that the resolution prevented them from booking the event. It was called Exotica. It prevented them from booking the Exotica event at the Convention Center. And the relevant portions of their depositions on that point are contained at Tabs 8 and 9 of the record excerpts that we filed. And shortly, so the resolution happened. The people involved in the contract at the Convention Center said that meant they couldn't book the event. It didn't matter who was going to sign the contract. They couldn't book the event, and that's what they said, and that's their testimony. Okay, so nothing on the face of the resolution prohibits Exotica Dallas from signing the contract, right? Well, actually, I'm sorry. No, the resolution says to not enter under contract with Three Expo, but it was enforced by the city officials responsible for the enforcement to refuse to book the event even in the name of the affiliate. So what evidence in the record do you point to for that? Can you tell me where in the record that is that the resolution prevented Exotica Dallas from pursuing the contract? Well, a couple of things. If you listen to the recording of the city council meeting, there's no question that the purpose of the resolution was to prevent the event, not to prevent the event only if the signatory on the contract was Three Expo. There's no doubt about that, and it was enforced that way by Ronald King and John Johnson, whose testimony said once the resolution was adopted, they could no longer book Exotica. Do you have a record side or something? Maybe you could tell us on rebuttal where it says that they couldn't book the contract with Exotica Dallas. Yes, John Johnson testified that as a result of the resolution, he could no longer book Exotica, and had the resolution not been adopted, he would have gone forward with the contract, and the contract which is in the record, which was tendered, would have been in the name of the affiliate. So their testimony is clear that once the resolution was adopted, both Ronald King and John Johnson, who were in charge of the contracts, both testified that it prevented booking the event Exotica. But nothing in the resolution actually prevents the booking of the Exotica. If you just read the resolution, it doesn't say that, right? But it was enforced that way. Do you agree, though, that it doesn't say that on its name? No, it doesn't say that. So you do agree that it doesn't say that?  Let me ask you, does it even matter? No. With respect to Article 3 standing? No. In other words, as I understand your argument, 3 Expo has simply got to show an injury, and I assume that you have documented that it is an injury to 3 Expo. And second, if there's a causal relation for that injury, they lost money by not being able to stage the event. Yes. Secondly, the injury is clearly traceable to the conduct of this resolution, irrespective of who it was applied against. Exactly. And thirdly, the court can redress that injury if they prove their case. Yes. So Article 3 standing has no relevance to who has actually owned that contract name, as far as Article 3 standing is concerned in this case, because you have proved that you have standing. Well, that's a really— And then later, these other issues can come forward as to what kind of injury. Yes. But you've alleged and demonstrated Article 3 standing. Exactly. That's a very friendly question, but I do think that it's relevant for traceability. And so I will return to my question about traceability. How do you prove the traceability requirement for standing when the Exotica Dallas LLC did not pursue entering into a contract after the resolution was passed and wasn't Exotica Dallas's failure to do so an intervening cause as to any injury, which would cause the second prong of standing, the traceability, to have difficulty? No, because they did apply. Now, it's true it was the wrong name. It was Exotica Texas when it should have been Exotica Dallas. But remember, that was all cleared up at the preliminary injunction stage. And what actually happened was they did apply under that scenario because Jay Handy wanted a reprise of the event in the name of the affiliate. They prepared a contract, which is in the record, and you can look at it. The contract that the convention center was going to sign, Ron King was going to sign, was for Exotica Texas LLC, which it should have been Exotica Dallas LLC, but that's not the point. And so the resolution gets adopted. Ronald King testifies. Once that happened, he realized that that was going to prevent the booking of Exotica. John Johnson testified that, yes, he was there at the council meeting. He heard everything, and once the resolution was passed, it banned Exotica, and he could no longer enter into the contract, and he couldn't book the event. But for the resolution, he would have gone forward with the event. But Exotica Dallas never actually tried to book the event. Yes, it did, unless you're suggesting that because the incorrect name was used. But, yes, they booked the event in 2015 under the name. But they didn't try to book the event after the resolution was passed, unless you can tell me where in the record that is. They tried to book it before the resolution was passed. But after the resolution was passed, did they try to ‑‑ did Exotica Dallas, is there any evidence in the record whatsoever that Exotica Dallas tried to book the event after the resolution was passed? Yes or no? No. No, because the event was prohibited. You said ‑‑ are you saying that the event was booked by Erotica Texas? Was it booked? What do you mean by booked? What was it booked? What I mean is that the first ‑‑ the 2015 event was held, and the contract was signed by the affiliate. The 2016 event that was proposed was going to be the exact same thing. The affiliate would actually sign the contract, but 3 Expo would produce and manage the event. And when they passed the resolution, the city, through Johnson and King, refused to book the event that would have been booked with Exotica Dallas. Okay. They said they couldn't do it. I understand what ‑‑ so I'm asking this to myself, but it's parallel to what Judge Elrod is saying, is that there was never a formal booking of the event in the name of Erotica Texas or any subsidiary of Expo 3? For 2016, you mean. 2016. There was a contract that was ready to be signed. Okay. But no, once ‑‑ they did reserve the dates,  End of story. because, one, if Expo 3 could not stage the event, this Shell Corporation had no interest in pursuing it further. Exactly. And the city had no interest in pursuing it further because of the resolution. And consequently, according to what, as I understand what Judge Elrod is saying, is that you never actually suffered an injury because you didn't take the final step to have them expressly say, no, you can't book it. I think that's what Judge Elrod is saying, but I think that ‑‑ Okay. Now, what I want you to do is to answer her question, and that is, do you have any evidence of how this came about? I mean, I just assume that once the resolution was passed, the parties just went their way. Yes. Well, what happened is we tried to get a preliminary injunction, and the city, you can read their 50‑page brief. Okay, and who is the city ‑‑ who is the injunction in behalf of? On behalf of three Expo events, LLC, Plaintiff versus the City of Dallas. And what were you trying to do? We were trying to get an injunction in joining the resolution and directing the city to allow Exotica to go forward. That's this case? Yes, in May of 2016. And the city vigorously defended against that injunction and never want ‑‑ as a matter of fact, if you look at page 14 of their brief, they say that the resolution disallowed Exotica. They don't say that the resolution only prevented Exotica if three Expo signed the contract. They didn't raise that issue until a year later. And you can imagine what would have happened had they come into court at that preliminary injunction after that political resolution was passed. And if they had come into court and said, oh, no, this doesn't bar Exotica, all you got to do is put it in the name of four Expo, for example. Are you saying that the fact that everybody understood that Exotica and three Expo were one and the same or all egos of each other and dealing with one was dealing with the other was just a generally accepted fact? Yes. But it was never put in writing to any extent of documentary evidence? Well, actually it was because one of the defenses that they raised at their preliminary injunction proceeding was because the wrong name was on the contract, Exotica, Texas, instead of Exotica, Dallas, they said, well, we can't find a formed corporation under Exotica, Texas. So we put in evidence and explained, well, it actually was supposed to be Exotica, Dallas, and we showed that it was a formed corporation and it was an affiliate of three Expo. And they never argued that based on that business model, the resolution didn't prohibit the event. In fact, the evidence all shows that everybody assumed that Erotica was the alter ego of three Expo. That question was never raised but accepted generally? It was always accepted generally. In fact, they tried to suggest that because the company wasn't formed, that was even some kind of a defense. But Mr. Handy then filed an affidavit explaining and their business model was known throughout. So there was never any question of that and they never suggested at the preliminary injunction hearing that three Expo didn't have standing for that reason. Did you ever show evidence sufficient for one to deduct from the record that Erotica was the alter ego of three Expo? Yes, yes. We had affidavit testimony from Mr. Handy and Mr. Perino explaining the whole thing. We put in the corporate records. In other words, there was no purpose for Erotica to exist other than to sign the contract in behalf of Expo. Is that clear in the record? Yes, yes. And how is that clear in the record? Because there was testimony that that was their business model for all kinds of other reasons having to do with intellectual property and the like. And one final thing before my time expires. The evidence is also clear that the affidavit of Patrick Perino, who was the lawyer and the other owner of three Expo, says we'll enter into the contract. If you don't want to sign it with our affiliate, if we prevail in this case, we're perfectly willing to sign the contract on behalf of three Expo. We would never, and to conclude otherwise, you've got to decide that they would have spent all this time, effort, and money litigating this issue, and if they prevailed, they would still refuse to sign the contract. Does Erotica have any independent employees? I'm sorry? Does the subsidiary, Erotica, have any employees? I don't. Well, I don't. It was probably all three Expo employees who managed the event. I can't answer that exactly, Your Honor, without. But they were basically the same. Got a red light. May it please the Court. My name is James Pinson, and I represent the city of Dallas. The district court granted dismissal on the city's factual challenge to three Expo's standing to assert its free speech, equal protection, and bill of attainder claims. Regarding standing, this court reviews a district court's dismissal for lack of subject matter jurisdiction de novo in a factual challenge to jurisdiction under Rule 12b-1. If the district court resolved any disputed facts, then this court reviews those determinations for clear error. The question of standing involves both constitutional limitations on federal court jurisdiction and prudential limitations on its exercise. Today I would like to talk first about why the court was correct because three Expo lacks constitutional standing, and then I would like to talk about... Okay, tell me why, then. Yes, Your Honor. First, the reason that three Expo lacked constitutional standing is because three Expo does not intend to enter into a contract with the city manager, and that was the prohibition in the resolution. This lack of intent implicates all three elements of standing, injury, causation, and redressability. All right, now, is there in the record evidence that shows that three Expo would have made money from this exhibit? Yes, Your Honor. Okay. So if the exhibit were canceled, it's clear that three Expo had an injury. It is clear that... They would have been injured. Even though not a party to the contract, they would have been injured. They would have suffered monetary loss. And they would have suffered monetary loss solely because of this resolution. Is that correct? Your Honor, we don't know, because we don't know what would have happened after this resolution. We don't know what would have happened after this resolution, Your Honor, because Exotica Dallas never asked to have a contract for the 2016 Expo. Did the city take the position that Exotica Dallas shouldn't even try to ask because they considered the resolution to bar this Expo itself from taking place? No, Your Honor. Did the city ever take that position? Never, Your Honor. Well, they say that these two people, they keep naming them, say that, oh, it was futile and that there was no need for Exotica Dallas to even try. This is what has been represented here today. What in the record contradicts that? Tell us why that's not in the record. There's just no evidence that either Exotica Dallas or 3 Expo, after the resolution, asked to enter into a contract. That's not the question she asked. She asked, did these two witnesses say that? I think they were your witnesses, too. There were employees in the city that said it was futile. Is that correct? Did they say that they wouldn't do a contract with Exotica Dallas or imply that in what they said? Don't even bother. The resolution bans the whole thing. Your Honor, I'm sorry. I'm not certain what they said. These are your witnesses at the injunction hearing, right? Yes, Your Honor. I believe they said something to that effect. If they said, don't even try, then why didn't he win the point? Well, because... Why are we talking about the fact that, aha, Exotica Dallas never tried, if they were discouraged from trying by the city's own employees? We're wasting everybody's time, aren't we? Well, I don't know that they were discouraged by the employees directly. There may have been statements made, I guess, in depositions, but I don't think there's any evidence that they were ever turned down because there's no evidence that they ever asked after the resolution. But can you get them for not asking if they were discouraged by the city's own people from trying? If that's true, how can you win that point? Your Honor, I'm not sure about the timing of the depositions. I believe that was months after the fact, but I could be wrong. If he's right about the facts, don't you lose this point? Perhaps, Your Honor. Okay, thank you. And if you lose that point, don't you lose the case? Well, Your Honor, still there is the issue of prudential standing because this is really an injury by Exotica Dallas because that is... That's true if it's prudential standing. Yes, Your Honor. Just generally speaking, if 3 Expo is in the zone of interest and has Article III standing, then they have prudential standing if they're in the zone of interest. And they're clearly in the zone of interest because you indicated that there is record evidence that they would lose money. Well, Your Honor, I believe that it goes beyond just whether they would lose money. It's also whether they had the intent to enter into a contract. And that was what the district judge ruled on was that he found that... How does that make any difference if Erotica, with Alter Ego, for the purposes of Article III standing, how does it make any difference? Well, Your Honor, I don't believe there's any support in the record for the Alter Ego status of Exotica Dallas. In fact, I believe that the record indicates that 3 Expo has consistently taken the position that Exotica Dallas was a separate entity that it had a separate role in regard to handling this expo, that it was the owner of the expo, that it undertook certain functions such as ticketing and other matters at the site, and that 3 Expo had separate functions of being a promoter and general manager. So they were not alter egos of each other, Your Honor. I mean, I read this in the briefs of somewhere. Well, I apologize that the same people that were running 3 Expo were running and directing the activities of Erotica. Is that not correct? Your Honor, I apologize if I've misstated the record, but I believe that it's consistently stated by 3 Expo that these were separate companies, that they were not alter egos of each other. The district court did not find they were alter egos, did they? That is correct, Your Honor. And just having the same people doing the jobs does not make an alter ego under Texas law, does it? No, it does not, Your Honor. And there was a dispute in the evidence between Jay Handy's deposition testimony under 30b-6 as the corporate rep where he testified that 3 Expo never has and never will intend to enter into a contract put on an Exotica Expo and Patrick Perino's declaration, which was filed in response to the city's motion to dismiss, in which he testified that 3 Expo is ready, able, and willing to serve as the contracting party with the convention center. So insofar as there is a conflict in this evidence, the district court found that 3 Expo failed to establish by a preponderance of the evidence that it actually intended to enter into a contract with the city to lease the convention center, and there is no basis in the record to support a definite and firm conviction that the district court committed a mistake in making this finding, which is the standard for clear error. The district court's finding that 3 Expo did not and does not intend to enter into a contract was not clearly erroneous. 3 Expo lacks standing to assert its First Amendment speech and assembly claims as well as its as-applied challenge to the city's sexually-oriented business ordinance because it did not suffer any concrete and particularized... Can I ask you that? Does the matter of intent to enter the contract under these circumstances indicate that that in itself indicates there was no Article III standing?  Does the matter of intent not to engage in the proscribed conduct, that that is definitely a bar to standing? And we have cited the Barber case for that. I know that's certainly true if you're talking about a radical, but it's kind of interesting to me that they have all of the criterion of Article III standing. Expo III does, and I'm making some assumptions, and that's, one, that they had an injury, two, that it was traceable to this resolution, and three, that if they prevail in court, that constitutional violation can be remedied with money. I'm assuming that. They didn't have the intent to enter the contract. What they intended to do was to have the reference from a radical to stage it. But the resolution only prohibited entering into a contract with 3 Expo. It did not prohibit entering a contract with Exotica Dallas. So that's the problem here. You don't have a connection between the proscribed conduct and the intent to engage in the proscribed conduct. Did the plaintiff ever even raise the argument that Expo was the alter ego of 3 Expo, or did they ever raise that as an issue? I believe not, Your Honor, and Mr. Murray can correct me if I'm wrong, but I do not believe that they have ever asserted that they were alter egos of each other. In fact, I think they have consistently contended that they were separate entities. Yes, Your Honor. So 3 Expo maintains it would have been futile for Exotica Dallas to request to use the convention center for an adult entertainment expo, and ordinarily a plaintiff has to submit to the challenge policy in order to be able to challenge it in court, but a plaintiff can be excused from the requirement upon a substantial showing that doing so would have been futile. But 3 Expo didn't make that showing to find that any request for the city to enter into a contract with Exotica Dallas would be futile would require the district court to speculate. The district court found, slip opinion at 14, note 8, that 3 Expo failed to make a substantial showing of futility. There was no clear error in this fact finding. Well, now what did the district court say about the testimony of your witnesses that conceded that it would have been futile for Erotica to apply? Your Honor, I believe that after considering all that evidence, the court determined that 3 Expo had failed to make a substantial showing that it would have been futile. The court took judicial notice of the fact that, well, it was an 8-7 decision by the city council and that 1 of the council members had already lost in a re-election effort. Since that time, Your Honors, I believe the court could take judicial notice that 2 more council members lost their elections, so 3 of these 8 are no longer on the council. The district court considered these matters as well as the evidence before it. It took judicial notice of those facts about the change and the potential change of the council composition, and the court found that 3 Expo had failed to make a substantial showing of futility. Is this resolution still on the records? It has not been withdrawn? I believe it is still on the record, Your Honor. I don't believe it's been withdrawn. 3 Expo also claims denial of equal protection, but that claim also fails for lack of standing for the same reason. All 3 Expo would have to do now to reignite this case is to make an application in its own name now, and you still have that resolution pending, and they could take off on that? Your Honor, it was a dismissal without prejudice, and I assume 3 Expo or Exotica Dallas could sue, but they would still need to— If they would apply. Yes, if they would apply. In their own name, so that your entire case rests solely on the basis that the name of the contracting party was Exotica and not 3 Expo. Is that correct? Yes, Your Honor, that and the finding that 3 Expo does not intend to enter into a contract. And I thought also that they didn't intend— that Exotica Dallas didn't actually try to enter into a contract. That is correct, Your Honor. There's no—there's never been an attempt by Dallas Exotica to enter into a contract. There was a contract in the name of Exotica Texas in 2015. That appears to have been a mistake. It appears that there is no entity known as Exotica Texas LLC. 3 Expo claims that Exotica Dallas ratified that contract for 2015, and yet in 2016 the new proposed draft contract was still in the name of Exotica Texas LLC, and I believe there's no evidence in the record that Exotica Dallas ever asked to enter into a contract. And so for the alternative ground for affirming, we have lack of prudential standing, and, you know, the elements of that are that the litigant has to have suffered its own injury, has to be closely associated with the third party, and there has to be a hindrance against the third party asserting its own claims. In this case, the third party would be Exotica Dallas. 3 Expo lacks prudential standing for two reasons. First, it suffered no injury from the resolution because it doesn't intend to enter into a contract with the city. And second, 3 Expo did not plead or show that Exotica Dallas would be hindered in asserting its own interest in entering into a contract. If access had been denied to Exotica Dallas, the purported First Amendment and equal protection claims would belong to Exotica Dallas, not to 3 Expo. But Exotica Dallas never requested access to the convention center, and 3 Expo cannot demonstrate that Exotica Dallas was itself injured. And 3 Expo implicitly conceded that Exotica Dallas was not hindered from protecting its own interests when it filed an untimely motion for leave to amend its complaint to add Exotica Dallas as a plaintiff. Similarly, regarding its as-applied challenge to the sexually oriented business ordinance, 3 Expo did not own Exotica Dallas in 2015, nor will it own any future Exotica Dallas events. Instead, 3 Expo is attempting to assert its as-applied claim on behalf of the purported owner of the event Exotica Dallas. This is insufficient to establish prudential standing because 3 Expo has not suffered an injury in fact and because there is nothing hindering Exotica Dallas from filing a lawsuit should it ever suffer an injury in fact. For all these reasons, 3 Expo also lacks prudential standing. In conclusion, the District Court's grant of the City's motion to dismiss was correct because 3 Expo did not have constitutional standing or prudential standing. Therefore, the Court should affirm the dismissal for lack of subject matter jurisdiction. And if there are no further questions, I'll yield the rest of my time. Thank you. Thank you. When you go back to the preliminary injunction proceedings and you look at page 14 of the City's brief in opposition to the preliminary injunction, they characterized it on February 10th. If your client filed an affidavit and said that they were ready, willing, and able to enter into a contract, why didn't you ask for an amendment to the pleadings? In other words, once the District Court says and began to argue about and the other side began to argue about you didn't have the proper parties before the Court, why didn't you make an amendment or intervene in some way so as to get your name in there? Well, actually we did seek leave to amend, but by that time it was a year and a half into the litigation and the Court said it was too late. It was a year and a half into the litigation and the Court said it was too late. You asked for Expo? You tried to amend the complaint so as to make— Exotica Dallas a party. Yeah, but not Expo. Expo is already a party, Your Honor, and Expo— What? 3-Expo is the plaintiff, and 3-Expo signed an affidavit saying we will sign the contract. We don't need to sign—we don't need to have the affiliate sign the contract. When they filed their motion to dismiss a year after the case had been pending and raised this issue, Mr. Perino filed an affidavit and says we're ready, willing, and able to sign it. Did you ever ask the Court—I've forgotten the question, so go ahead. We opposed the motion to dismiss on many grounds, one of which was— Oh, I was going to ask you, did you ever raise the question of Altico? Did you ever say— Yes. At the preliminary injunction stage, when they were questioning who is this Exotica Texas, Mr. Handy filed an affidavit explaining that the affiliate hadn't even been formed yet because they were dealing with 3-Expo, and once 3-Expo was given the go-ahead to have the contract, then they would sign the affiliate. It is the standard business practice for 3-Expo events to be the underlying management company for the various conventions conducted throughout the country, while a separate entity, in this case Exotica Dallas, is created to own that particular event, and they're both Texas limited liability companies, or— That's not Altico. Pardon me? That's not Altico. I mean, they have different—both of them have different reasons for existing, and actually Erotica, or Exotica, owns it. Yes, but 3-Expo promotes it, manages it, and conducts the event, and is willing to enter into the contract in its own name. It's just a business preference. It's not a matter of substance as far as the city is concerned. Counsel, you keep saying over and over again that 3-Expo stood ready and willing to enter into its own name. I know that there is evidence in the record of that effect. However, there is also opposite evidence in the record. The 3-Expo's Rule 30b-6 deposition, Handy testified, that 3-Expo never enters into contracts with convention centers in any location, and it never intends to do so at all in the future. So the district court gets to make a factual determination after seeing this affidavit and looking at the 30b-6 deposition and says, I think this one is right and that one's wrong. That's what the district court gets to do on these standings. They get to make facts, and so we have to find that was clearly erroneous, but if there's some here and some there, how can we find it clearly erroneous? Because the contrary finding makes no common sense. You have to decide in order to accept that, that if we win the case after spending all this time and effort and resources and we get an injunction and we get damages or an injunction and the city says, oh, well, we're not going to sign, we're not going to go forward with your affiliate. We'll only go forward if you sign the contract. You have to conclude that 3-Expo would say, oh, no, we're going to give up our victory and we wouldn't sign the contract. That makes no sense at all. It is clearly erroneous to conclude that 3-Expo, that sought preliminary injunctive relief and that was the promoter and is the promoter and stands to gain and basically runs the event, would say, nope, we won't sign the contract when we win the case if we're going to be required to sign the contract in order to obtain relief. That just makes no sense. And John Johnson, just to finish it. Let's get back to this other point. Is the record clear that the defendant's two witnesses at the convention center said that it was futile to pursue the matter any further once the city had passed the resolution against 3-Expo? Record excerpt, page 516. This is the testimony of Mr. Johnson. So as of February 10, 2016, you were no longer authorized to enter into a contract to book the Exotica for those dates in May 2016, correct? Answer, correct. Question, now had the resolution not been adopted, you were prepared to go forward with the contract, correct? And he said, sure. I mean, I don't know how it could be any clearer. What is the title of that person? That is John Johnson, and that is in tab. What is his title? He's the assistant director of the convention center who dealt at all times with 3-Expo and was the one who shepherded them through the 2015 event. He had no authority to sign on behalf of the city? Well, he had his boss, Ron King, who also said that the resolution put an abrupt halt to the Expo, authorized John Johnson to continue. And, yes, King would have signed the contract on behalf of the city if the resolution hadn't been adopted, but he gave full authority to John Johnson to work out those details, yes. Thank you. Okay. That case is...